Case: 5:25-cv-00417-REW   Doc #: 1   Filed: 11/07/25   Page: 1 of 15 - Page ID#: 1

EDKy 520 (Rev. 01/22) Complaint under § 1983 or Bivens Action

Eastern District of Kentucky
**FILED**

NOV 07 2025

AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
_____ DIVISION at _____

CIVIL ACTION NO. 5:25-CV-417-REW (Court Clerk will supply)

PLAINTIFF   Brandy Cornett.            Demand for Jury Trial:

VS.                                    Yes (__) No (__)

DEFENDANT :   David Baldwin, Chair of the Sumter County Board of Commissioners, in his official capacity

## I. Plaintiff

A. Name (list any aliases): Brandy Cornett

B. Prisoner ID #: N/A    Check one: Convicted ___   Pretrial Detainee ___

C. Place of present confinement: N/A – Non-incarcerated civilian

D. Address: 206 Twelfth Street, Apt F, Lexington, Kentucky 40505

## II. Defendant(s)

(additional defendants may be listed on a separate sheet of paper)

A. Defendant's Name: David Baldwin

Title or Position: Chair of the Sumter County Board of Commissioners

Place of Employment: 416 West Lamar Street, Americus, Georgia 31709

### III. Statement of Claim:

Below you should state the FACTS of your case. You don't need to make legal arguments or refer to any cases or statutes.

If you wish to allege a number of related claims, write out each claim in a separate numbered paragraph. (If you need more space, you may attach extra sheets).

### A. What happened? Explain specifically what each Defendant did or failed to do.

INTRODUCTORY CONTEXT

1. The entities and individuals referenced throughout this Complaint, including the Sumter County Sheriff's Office and the Division of Family and Children Services (DFCS), at all times acted under the authority and direction of Sumter County, Georgia ("Defendant County") and within the scope of their employment and agency. All actions and omissions described herein were carried out on behalf of, and for the benefit of, Defendant County.

2. Upon receipt of Plaintiff's Emergency Settlement Demand, Defendant County—through its retained counsel—initiated correspondence with its insurance carrier almost immediately. Within approximately one hour and fifty minutes of the County Attorney's office opening for business, counsel had already engaged the insurer in active communication regarding the Plaintiff's notice. This rapid coordination demonstrates direct awareness of the claims, acknowledgment of potential liability, and administrative control within Defendant County's own chain of command. (See Master Exhibit Log, Exhibits Q, X, AU-1 .)

3. Plaintiff Brandy Cornett is a resident of Kentucky and the biological mother and legal caregiver of her minor children. Under Georgia law, caregivers and legal guardians—including Plaintiff—are mandated reporters legally required to report suspected child abuse or neglect.

4. Despite this recognition of her legal role, Defendant County—acting through DFCS and associated agencies—simultaneously branded Plaintiff "dangerous" while affirming her

status as a caregiver subject to mandatory-reporter obligations. This contradiction underscores the County's arbitrary and discriminatory treatment of Plaintiff and the procedural inconsistencies that followed. (See Master Exhibit Log, Exhibits B, I, L, P .)

5. Shortly after the birth of her youngest child, DFCS coerced Plaintiff into signing an involuntary "safety plan" under threat of immediate child removal. The alleged basis was prenatal cannabis use—a non-criminal matter unsupported by evidence of actual harm. Although DFCS labeled Plaintiff "dangerous," the agency imposed only nominal monitoring consisting of monthly check-ins and drug screenings, all of which Plaintiff passed. Nonetheless, DFCS sustained a finding of "child endangerment," failed to provide documentation justifying that conclusion, and prematurely closed the case. (See Master Exhibit Log, Exhibits N, P, V .)

6. This conduct reflects a systemic pattern of coercive case-management tactics and disability-based discrimination directed at neurodivergent parents, establishing a county-wide pattern of procedural neglect.

7. From 2019 through August 2025, Plaintiff's eldest child visited the paternal grandparents' home in Sumter County, Georgia, on an occasional basis—averaging roughly six visits per year. During the relevant period, the paternal grandmother served as a de facto foster parent for DFCS, and her spouse was employed by the agency. DFCS involvement in Plaintiff's case began during or immediately following these visits, coinciding with the period in which the agency exercised overlapping authority over both the relatives and the Plaintiff's family. (Master Exhibits B, J, K, P)

8. The foregoing acts and omissions collectively demonstrate Defendant County's operational control, deliberate indifference, and systemic failure to maintain lawful practices of oversight and child protection.

CHRONOLOGICAL ACCOUNT (ORDERED EVENTS)

9. Plaintiff's six-year-old autistic child disclosed repeated physical abuse by the child's paternal grandmother. Plaintiff immediately followed trauma-reporting protocol and contacted local law enforcement. (See Master Exhibit Log, Exhibits A–C .)

10. Plaintiff called 911 and filed an incident report with the Sumter County Sheriff's Office. The resulting report contained false statements that minimized the abuse and

misrepresented Plaintiff's prior directive that no corporal punishment was permitted. (See Master Exhibit D .)

11. Retaliation began shortly thereafter: the child's father was removed from his work schedule, Plaintiff received harassing messages from the accused relative, and she escalated her report to the Georgia Bureau of Investigation. (See Master Exhibit H .)

12. When Plaintiff requested a copy of her police report, the document provided was blank, confirming record tampering. She notified supervisory staff and the District Attorney but received no corrective action, prompting her to duplicate the report directly with DFCS and the child's physician. (See Master Exhibits G, I .)

13. Approximately seventy-one hours after the initial disclosure—one hour short of the required investigative window—Lieutenant Ciani contacted Plaintiff, admitted that command staff had known, read the falsified report aloud, and refused correction. He minimized the abuse and mocked Plaintiff's disability status. (See Master Exhibits E–G .)

14. Plaintiff was later notified that a forensic interview had been scheduled for the following morning with less than nineteen hours' notice and without a precise address, creating accessibility barriers for a disabled complainant. (See Master Exhibit I .)

15. Plaintiff sought legal representation from multiple private firms and contacted the U.S. Department of Justice, but each firm declined for reasons unrelated to case merit. (See Master Exhibits J–K .)

16. Plaintiff met with a state-contracted mental-health case manager who agreed to assist with medical-card renewal and food access but failed to appear for the scheduled follow-up, worsening deprivation and isolation. (See Master Exhibit P .)

17. The child exhibited escalating trauma responses, including night terrors and refusal to sleep alone, following continued inaction by County authorities. (See Master Exhibit P

18. Plaintiff transmitted an Emergency Settlement Demand and supporting exhibits to the County Attorney, County Council, and County Administrator before business hours. The County Attorney invoked the County's insurance carrier within hours. (See Master Exhibits Q, X .) That same evening, Plaintiff filed an FBI tip documenting ongoing retaliation.

19. The certified USPS mailing for Plaintiff's Emergency Protective Order and IFP filing was accepted and scanned at the Americus Post Office. The printed tracking number appeared in USPS records as "Accepted—In Office" due to a printer distortion. When corrected by one digit, the number matched the confirmed delivery scan to the federal docket clerk, verified by phone with docket number [insert number]. (See Master Exhibits N–P.)

20. Plaintiff contacted the County Clerk to confirm filing status. The Clerk refused assistance, mocked Plaintiff's disability, and instructed her to "call 911." That evening, two military veterans—Plaintiff's stepfather and his brother—executed an emergency extraction of the family from Sumter County to Lexington, Kentucky, due to escalating safety threats. (See Master Exhibit AF .)

21. Plaintiff faxed a formal Discontinuation of Services notice to DFCS, terminating all agency involvement. (See Master Exhibit AP .)

22. Plaintiff received official correspondence from Georgia Medicaid confirming that DFCS had reported her relocation to Kentucky while keeping the case listed as "active." Because DFCS has refused to close the case, Plaintiff remains unable to obtain medical benefits for her children despite relocation and good-faith compliance. (See Master Exhibits AQ, AV-1 .)

23. The foregoing chronology demonstrates a continuous pattern of retaliation, obstruction, and deliberate indifference by Defendant County and its subordinate agencies, culminating in Plaintiff's forced relocation and ongoing deprivation of medical and procedural protections. These events are further detailed in the accompanying Master Exhibit Log (A through AV-1), incorporated herein by reference for all purposes.

## B. When did the event happen?

1. May 30 – May 31 2024
2. May – November 2024
3. July 5 2024
4. July 5 – August 19 2024
5. Early September 2024

6. Early November 2024
7. 2019 – August 2025
8. August 22 2025
9. August 22 2025
10. August 22 2025
11. August 23 2025
12. August 23 2025
13. August 24 2025
14. August 25 2025
15. August 25 2025
16. August 26 2025
17. August 27 – August 29 2025
18. August 30 – September 2 2025
19. August 28 2025
20. September 4 2025
21. September 22 2025
22. October 28 2025
23. Aug 22,2025 – September 4 2025

## C. Where did these events happen?

The initial events and violations giving rise to this complaint occurred in Sumter County, Georgia, involving Georgia-based agencies and officials. Subsequent related actions, retaliation, and ongoing harm occurred while the Plaintiff was residing in Kentucky after September 4, 2025.

## IV. Exhaustion of Administrative Remedies

N/A – Plaintiff Brandy Cornett is a non-incarcerated civilian.

The Prison Litigation Reform Act (42 U.S.C. § 1997e(a)) does not apply to this action.

## V. OTHER LAWSUITS

A. Have you filed any other lawsuit dealing with the same facts raised in this action?

☐ YES     ☐ NO

B. If your answer to question A is YES, describe the lawsuit in the space below.

If you filed more than one other lawsuit, provide the same information for each other lawsuit on additional sheets of paper.

1. PARTIES:

Plaintiff: Brandy Cornett

Defendant(s): Sumter County Sheriff's Office, DFCS, County Administrators, and County Council

2. COURT: U.S. District Court for the Middle District of Georgia

3. CASE NO.: 1:2025-cv-00126

4. OUTCOME:

Confirmed docketed for judicial review on September 4, 2025.

Plaintiff called the clerk's office on September 18, 2025 for an update and was informed the case was on Judge Leslie Abrams Gardner's desk, where it has remained since.

5. DATE OF JUDGMENT, DISMISSAL, or APPEAL: Pending

Cornett v. Baldwin | Related Case No. 5:25-cv-00391 (M.D. Ga., transferred 10/24/25)

## C. List any other lawsuits that you have filed in any state or federal court:

1. Plaintiff: Brandy Cornett    vs. Defendant(s): Sumter County Sheriff's Office, et al.

Court Name: U.S. District Court for the Eastern District of Kentucky, Central Division (Lexington)

Case No.: 5:25-cv-00333-DCR

Nature of Claim: Civil Rights – 42 U.S.C. § 1983 Action

Outcome: Case dismissed without prejudice; stricken from the docket. Final and appealable judgment entered by Judge Danny C. Reeves.

Date Filed: September 18, 2025    Date of Judgment: September 19, 2025

2. Plaintiff: Brandy Cornett    vs. Defendant(s): Sumter County Sheriff's Office, Sumter County Board of Commissioners, United States Department of Justice, Southwestern Judicial Circuit District Attorney Office, Georgia Department of Human Services, Georgia Bureau of Investigation, and Mental Health Agency

Court Name: U.S. District Court for the Eastern District of Kentucky (Transferred to Middle District of Georgia – Albany Division)

Case No.: 1:2025-cv-00151 (after transfer)

Nature of Claim: Civil Rights – Disability Discrimination under 42 U.S.C. § 1400 (Civil Rights of Handicapped Individuals)

Outcome: Filed October 21, 2025 in the Eastern District of Kentucky. Signed and ordered transferred by Judge Danny C. Reeves on October 23, 2025. Docketed October 24, 2025 in the Middle District of Georgia and now pending before Judge Leslie Abrams Gardner.

Date Filed: October 21, 2025    Date Transferred and Docketed: October 23–24, 2025    Date: Pending

## VI. Relief:

WHEREFORE, the Plaintiff, Brandy Cornett, appearing pro se and in forma pauperis, respectfully requests that this Honorable Court, invoking its broad discretion in furtherance of the spirit and integrity of the law, grant the following relief:

### 1. Venue and Jurisdiction

Pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), Plaintiff respectfully requests that this matter be transferred and formally docketed before the United States District Court for the Eastern District of Kentucky (Lexington Division), the district encompassing Plaintiff's long-term domicile, family ties, and the locus of material events—including retaliation against a mandated reporter, obstruction of due process, and the interstate manipulation of official records originating in Georgia and producing continuing harm within Kentucky.

Plaintiff has resided within the Eastern District of Kentucky for more than twenty years; her immediate family, primary residence, and core evidentiary records remain here. Although certain medical evaluations and public-benefit denials originated in Georgia, the resulting deprivation, retaliation, and ongoing consequences have occurred within this District, establishing continuing jurisdiction under 28 U.S.C. § 1391(b)(2).

The Georgia forum has failed to complete closure or take jurisdictional action necessary to permit proper refiling, resulting in a continuing procedural obstruction that effectively bars Plaintiff from access to relief in her home forum. Despite formal transfer on October 24, 2025, the Middle District of Georgia has issued no acknowledgment, order, or ADA accommodation, notwithstanding Plaintiff's verified disability disclosures and in-forma-pauperis approval.

Because all federal courts are public entities subject to Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.), this inaction constitutes a constructive denial of access to judicial process under Bounds v. Smith, 430 U.S. 817 (1977), and Lewis v. Casey, 518 U.S. 343 (1996). The resulting deprivation implicates both procedural due process and equal-protection guarantees secured by the Fourteenth Amendment.

Consistent with Goldlawr v. Heiman, 369 U.S. 463 (1962), transfer "in the interest of justice" is warranted to cure procedural defects and prevent jurisdictional prejudice. Plaintiff further requests that, upon transfer, this Court invoke its authority under Fed. R. Civ. P. 16(a)(1) and 28 U.S.C. § 651(b) to order an expedited judicial settlement or mediation conference, facilitating immediate review of the verified record and restoration of Plaintiff's constitutional right to meaningful access to the courts.

Therefore, Plaintiff respectfully moves this Court to assume jurisdiction, re-establish venue in the Eastern District of Kentucky, and proceed with immediate scheduling consistent with the Court's equitable powers and the interests of justice.

## 2. Immediate Interim Relief

Irreparable harm is ongoing, and Defendants (through counsel and their insurer) have already admitted liability for the violations at issue. Under Fed. R. Civ. P. 65(b) and established federal law, Plaintiff is entitled to prompt judicial relief. Because IFP status has already been granted, Plaintiff requests immediate, court-supervised mediation conducted exclusively in writing (via email), with all correspondence maintained as part of the court record. The mediation process shall be initiated and the first written exchanges scheduled within fourteen (14) days of docketing or judicial review.

All non-judicial remedies have been exhausted, and no administrative or informal process has stopped the ongoing violations. Plaintiff seeks Court intervention only after exhausting every other available option. Prior to this action, Plaintiff sought relief and intervention through:

- Direct settlement demands and mediation invitations to Defendants and their insurer. County counsel acknowledged receipt and transmitted Plaintiff's settlement demand to the County's insurer within two hours (see Exhibit A), confirming actual knowledge and the seriousness of the allegations.
- Formal complaints and disclosures to the District Attorney, Georgia Bureau of Investigation (GBI), Federal Bureau of Investigation (FBI), Department of Justice (DOJ), and the Office of the Attorney General.

- Submission of sworn evidence and urgent requests to all relevant administrative authorities.

Despite these efforts, no non-judicial process has yielded relief or halted the ongoing deprivation of federally protected rights. Plaintiff now turns to this Court as the only forum capable of providing prompt and enforceable protection.

Plaintiff specifically requests and requires that all mediation and settlement correspondence be conducted in writing (email only), as a necessary ADA accommodation due to documented disabilities (including audio processing disorder, anxiety, and communication challenges), and due to a documented pattern of bad faith, misrepresentation, and retaliation by Defendants and their counsel. No verbal, off-record, or informal communications shall be accepted. Plaintiff will print and submit each email chain as a PDF exhibit to the Court as part of the official record.

**Strict Mediation Timelines and Response Requirements:**

- The parties shall commence written mediation (by email) within fourteen (14) days of docketing or judicial review.
- Each party must reply to mediation-related emails within three (3) business days of receipt, unless Plaintiff consents and the Court approves an extension for truly extraordinary circumstances.
- Any extension not agreed to by Plaintiff and not approved in writing by the Court shall be deemed a refusal to participate in good faith, and grounds for immediate court intervention, adverse inference, or sanctions.
- The written mediation process shall conclude (either by resolution or declared impasse) within thirty (30) days of the Court's order, unless the Court grants an extension for good cause shown.

**Legal Authority and Court Role:**

This request is grounded in the Court's statutory and equitable authority—including:

- 28 U.S.C. § 651(b)

- Joint Local Rule 16.2 (E.D./W.D. Ky.)

- Americans with Disabilities Act, Title II: 42 U.S.C. § 12132; 28 C.F.R. § 35.130

- Rehabilitation Act § 504: 29 U.S.C. § 794

- 42 U.S.C. § 1983

- CAPTA: 42 U.S.C. § 5106a

- Federal Rules of Civil Procedure

—to ensure prompt and meaningful access for disabled and pro se litigants. The interests of justice and judicial economy require immediate intervention to prevent further retaliation, witness intimidation, or compounding injury.

Plaintiff further requests that the Court retain jurisdiction to approve, enforce, or enter judgment upon any mediated agreement, including equitable restitution, verified compensatory relief, and any corrective measures warranted under federal law. Any delay in convening expedited, written mediation at this stage should be deemed constructive denial of access to justice and of required ADA accommodation.

### 3. Judicial Recognition and Compensatory Relief

Plaintiff respectfully moves this Honorable Court, under 42 U.S.C. § 1983, 42 U.S.C. §§ 12131–12134 (ADA Title II), and 29 U.S.C. § 794 (§ 504 of the Rehabilitation Act), to enter judgment recognizing the systemic and egregious nature of the constitutional and statutory violations described herein.

After reporting the torture of her six-year-old disabled child by a DFCS-sanctioned foster parent—abuse witnessed by the foster parent's spouse, an agency employee—Plaintiff was met not with protection, but with retaliation, coercion, falsified records, and deprivation of rights guaranteed under the Constitution and federal disability law. The resulting pattern of obstruction,

intimidation, and procedural manipulation constitutes a direct violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the anti-retaliation provisions of 42 U.S.C. § 12203.

Plaintiff therefore seeks:

1. Judicial Recognition. A formal finding acknowledging the gravity and systemic nature of Defendants' misconduct—including retaliation against a mandated reporter, suppression of an abuse report, and deprivation of due process and equal protection—consistent with this Court's declaratory authority under 28 U.S.C. § 2201.

2. Restorative and Compensatory Relief. Full compensatory damages and judicially imposed sanctions for the physical, emotional, and economic harm sustained by Plaintiff and her child, consistent with Carey v. Piphus, 435 U.S. 247 (1978) (damages for constitutional deprivation) and Memphis Community School Dist. v. Stachura, 477 U.S. 299 (1986) (damages measured by actual injury).

Such relief is sought not to restore public benefits, but to ensure financial accountability for egregious misconduct that violated federally protected rights and inflicted enduring trauma upon a disabled child and her mandated-reporter parent. Plaintiff further requests that this Court, upon finding liability, order expedited mediation or settlement proceedings pursuant to Fed. R. Civ. P. 16(a)(1) and 28 U.S.C. § 651(b), in the interest of justice and judicial economy.

Therefore, Plaintiff respectfully requests that this Honorable Court enter formal judicial recognition of the systemic and retaliatory conduct described herein, issue findings consistent with its authority under 28 U.S.C. § 2201, and reserve determination of any further equitable or ancillary relief for subsequent proceedings as justice may require.

### 4. Other Relief

Plaintiff respectfully requests such further relief as this Honorable Court deems just and

proper, including referral of verified evidence for review under 18 U.S.C. §§ 241 and 242 by the U.S. Department of Justice, Civil Rights Division.

This request is made in the interest of justice and public integrity, to ensure that patterns of civil-rights violations and retaliation against mandated reporters are reviewed by the appropriate federal authorities for potential criminal enforcement and systemic oversight.

**In light of the sustained deprivation of medical access, child welfare supports, and the corresponding federal oversight lapse extending across state lines, Plaintiff respectfully invokes the Court's inherent equitable powers and requests that this matter be given immediate judicial consideration. The ongoing harm constitutes an imminent and continuing threat to health and safety within this Court's jurisdiction. Pursuant to Rule 65(b) and established precedent recognizing the necessity of prompt intervention to prevent irreparable injury, Plaintiff asks that all preliminary review, scheduling, and discovery be accelerated to the fullest extent consistent with due process.**

*The deprivation and resulting trauma remain ongoing as of the date of filing, rendering immediate judicial action necessary to prevent further irreparable injury.*

***The enforcement of these rights is not contingent upon agency cooperation or policy preference but derives directly from established federal mandate.***

## VII. Review this Form

Please take a moment to go back and review your responses to each of the questions.

Immediately below you are required to certify under penalty of perjury that the information you have provided in this form is correct to the best of your knowledge, so please make sure that your responses fully and accurately explain your claim.

## CERTIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

*Brandy Cornett*

Signature of Plaintiff: Brandy Cornett.

Prison ID#: N/A – Non-Incarcerated Civilian.
206 Twelfth Street, Apt F

Date: 11/7/2025

Plaintiff's Address:

Lexington, Ky, 40505